UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| MONET OLIVERAS,<br><br>      Plaintiff,<br><br>      v.<br><br>THE UNITED STATES OF AMERICA, THE UNITED STATES DEPARTMENT OF HOMELAND SECURITY OFFICER JOHN DOE 1, and THE UNITED STATES DEPARTMENT OF HOMELAND SECURITY OFFICER JOHN DOE 2, individually, and in their capacity as members of THE UNITED STATES DEPARTMENT OF HOMELAND SECURITY,<br><br>      Defendants. | 16 Civ. 9619 (KPF)<br><br>**OPINION AND ORDER** |

KATHERINE POLK FAILLA, District Judge:

  This case began with a pre-dawn raid. At 4:00 a.m. on April 27, 2016, as Plaintiff Monet Oliveras lay sleeping, unnamed officers of the United States Department of Homeland Security ("DHS") prepared to execute a search warrant at an apartment on the first floor of her building. As Ms. Oliveras approached the window of her basement apartment in response to noises outside, a flash and explosion suddenly transformed the scene, knocking her backwards. A second explosion filled her room with smoke and left her eyes stinging. And when Plaintiff tried to leave her apartment, armed officers informed her that she could not. The incident left her with physical and emotional injuries that persist to this day. As a result, Ms. Oliveras brought suit against the United States (the "Government") and the unnamed DHS officers. The Government, the only party to appear to date, moves to dismiss.

The Court understands that the use by law enforcement officers in civilian neighborhoods of devices designed for the battlefield may pose risks, but the weighing of such risks against the necessity of using such weaponry is a choice that is firmly within the province of governmental decision-makers. It is the precise type of choice that is protected by the discretionary function exception (the "DFE") to the Federal Tort Claims Act, 28 U.S.C. §§ 1346(b), 1402(b), 2401(b), 2671-80 (the "FTCA"). The Court accordingly finds that it lacks subject matter jurisdiction to consider Plaintiff's claims against the Government.[1]

## BACKGROUND[2]

### A. Factual Background

Plaintiff is a U.S. citizen who, at the time of the incident, resided in a basement apartment in the Bronx. (TAC ¶ 7). She brings claims against the Government, of which DHS is a component. (*Id.* at ¶ 8). She also brings claims against unnamed DHS Officers, John Doe 1 and John Doe 2. (*Id.* at ¶ 9).

---

[1] Given the procedural posture, the Court does not discuss in detail Plaintiff's claims against the unnamed DHS officers, which claims were brought pursuant to *Bivens* v. *Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971). The Court notes that the Supreme Court has provided for *Bivens* suits, partially because plaintiffs in Ms. Oliveras's position lacked a statutory legal recourse for certain actions by federal law enforcement officers.

[2] The facts in this section are drawn principally from the allegations in the Third Amended Complaint (the "TAC" (Dkt. #41)). For ease of reference, the Court refers to the Government's Memorandum of Law in Support of the Motion to Dismiss as "Def. Br." (Dkt. #49); to Plaintiff's Memorandum of Law in Opposition to the Motion to Dismiss as "Pl. Opp." (Dkt. #50); and to the Government's Reply Memorandum of Law in Support of the Motion to Dismiss as "Def. Reply" (Dkt. #52).

### 1. Plaintiff's Building

Plaintiff's basement apartment is a unit in a building with four stories above street level and one below. (TAC ¶¶ 28-29). Plaintiff's apartment is accessed through a door on the side of the building that is below street level, separate from the main access door for the rest of the building. (*Id.* at ¶¶ 29-31). To enter her apartment, Plaintiff takes a stairway down from the street to an outdoor areaway below street level. (*Id.* at ¶ 32).

### 2. The Raid

Plaintiff was asleep on the morning of April 27, 2016, when she was roused by a noise outside her apartment. (TAC ¶¶ 12-13). As she went to shut her window, she saw a flash and heard an explosion. (*Id.* at ¶¶ 14-15). The explosion knocked her backwards, and she hit her back and head against the wall. (*Id.* at ¶¶ 16-17). A second explosion shattered her windows. (*Id.* at ¶¶ 18-20). Vapor and fumes filled her apartment, stinging her eyes. (*Id.* at ¶¶ 21-23).

Attempting to escape, Plaintiff went to the front door of her apartment and observed the two DHS officers in full tactical gear with their weapons drawn. (TAC ¶ 24). The two officers told her she could not leave. (*Id.* at ¶ 25). Plaintiff alleges that the officers were using "flash bangs" in service of executing a search warrant on the first floor of her building. (Id. at ¶¶ 26-27). [3] The

---

[3]  Neither party specifies the exact explosive device used in this raid. Plaintiff refers to the explosives throughout as "flash bombs." (TAC ¶¶ 26, 34; Pl. Opp. 4-15). The Government refers to them as "flash bangs" and defines them as "a diversionary device used by law enforcement that emits a bright flash and blast of sound, generally for the purpose of disorienting the occupants of a premises upon which law enforcement is

3

devices were placed in the areaway outside the windows of her apartment. (*Id.* at ¶ 34). The two officers refused to engage with Plaintiff and provided her no explanation of the situation. (*Id.* at ¶ 35). When Plaintiff was finally allowed to leave her apartment, the officers refused to assist her, despite her requests for medical attention. (*Id.* at ¶ 38).

Plaintiff eventually called herself an ambulance, and she consulted with a cardiologist regarding chest pains that she was experiencing. (TAC ¶¶ 39-40). Plaintiff was unable to return home for three weeks due to damage to her apartment, and the raid left her with ongoing irritation in her eyes, chest pains, migraines, and psychological injury. (*Id.* at ¶¶ 42-45).

**B.     Procedural Background**

On December 13, 2016, Plaintiff filed this suit, which was initially brought against New York City and several unknown police officers. (Dkt. #1). On December 29, 2017, after gaining further information regarding the raid, Plaintiff filed an amended complaint against the United States, DHS, and unnamed DHS officers. (Dkt. #25). On March 6, 2017, Plaintiff filed a second amended complaint, dropping the claims against DHS. (Dkt. #36).

On April 13, 2018, Plaintiff proposed, and the Court accepted, Plaintiff's third amended complaint ("TAC"), which is the operative complaint. (Dkt. #41-42). The TAC brings claims against the two DHS officers under *Bivens* v. *Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971), for

---

executing a warrant to give them an opportunity to enter." (Def. Br. 1-2). For ease of reference, the Court refers to them as flash bangs throughout this Opinion.

false imprisonment and excessive force. (TAC ¶¶ 46-56). The TAC also brings FTCA claims against the Government for false imprisonment, battery, negligence, and negligent infliction of emotional distress. (*Id.* at ¶¶ 57-83).

On May 18, 2018, the Government filed a motion to dismiss the FTCA claims against it under Federal Rule of Civil Procedure 12(b)(1) or, in the alternative, for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). (Dkt. #48-49). Plaintiff filed her opposition to the motion on June 15, 2018. (Dkt. #50). The Government replied to Plaintiff's opposition submission on June 22, 2018. (Dkt. #29).

## DISCUSSION

### A. Plaintiff's Claims Against the Government Are Barred by Sovereign Immunity

#### 1. Applicable Law

##### a. Motions to Dismiss Under Rule 12(b)(1)

The Government argues principally that this Court lacks jurisdiction to consider Plaintiff's claims due to the Government's sovereign immunity. Rule 12(b)(1) permits a party to move to dismiss a complaint for "lack of subject-matter jurisdiction." Fed. R. Civ. P. 12(b)(1). "A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." *Lyons* v. *Litton Loan Servicing LP*, 158 F. Supp. 3d 211, 218 (S.D.N.Y. 2016) (quoting *Makarova* v. *United States*, 201 F.3d 110, 113 (2d Cir. 2000)). In resolving a Rule 12(b)(1) motion, "the district court must take all uncontroverted facts in the complaint ... as true, and draw all reasonable

5

inferences in favor of the party asserting jurisdiction." *Fountain* v. *Karim*, 838 F.3d 129, 134 (2d Cir. 2016) (quoting *Tandon* v. *Captain's Cove Marina of Bridgeport, Inc.*, 752 F.3d 239, 243 (2d Cir. 2014)). "A plaintiff asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists." *Id.* (quoting *Makarova*, 201 F.3d at 113).

### b. The FTCA's Waiver of Sovereign Immunity

Where, as here, the United States is named as a defendant, the doctrine of sovereign immunity may present a jurisdictional bar to suit. *See FDIC* v. *Meyer*, 510 U.S. 471, 475 (1994). "The basic rule of federal sovereign immunity is that the United States cannot be sued at all without the consent of Congress." *Block* v. *North Dakota ex rel. Bd. of Univ. and School Lands*, 461 U.S. 273, 287 (1983). And "[t]he waiver of sovereign immunity is a prerequisite to subject-matter jurisdiction[.]" *Presidential Gardens Assocs.* v. *U.S. ex rel. Sec'y of Hous. & Urban Dev.*, 175 F.3d 132, 139 (2d Cir. 1999) (citing *United States* v. *Mitchell*, 463 U.S. 206, 212 (1983)).

"The United States, through the FTCA, has made a limited waiver of sovereign immunity." *James* v. *United States*, No. 99 Civ. 4238 (BSJ) (HBP), 2003 WL 22149524, at *4 (S.D.N.Y. Sept. 17, 2003) (citing *Meyer*, 510 U.S. at 475). That waiver, however, contains a number of exceptions. Most relevant to this Opinion, the United States does not permit suits against it that are "based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused." 28 U.S.C.

6

§ 2680(a); *see also Fazi* v. *United States*, 935 F.2d 535, 537 (2d Cir. 1991). In other words, a court lacks subject matter jurisdiction over any claim that involves the discretionary functions of the Government. *Id.* And as the statute makes clear, the DFE covers even the negligent use of such discretion. *See* 28 U.S.C. § 2680(a) (exempting suits from the FTCA, even where "the discretion involved be abused"); *see also In re Agent Orange Prod. Liab. Litig.*, 818 F.2d 210, 215 (2d Cir. 1987).

The Second Circuit has provided a two-part test for determining when the DFE bars a suit:

> The DFE bars suit only if two conditions are met: (1) the acts alleged to be negligent must be discretionary, in that they involve an element of judgment or choice and are not compelled by statute or regulation and (2) the judgment or choice in question must be grounded in considerations of public policy or susceptible to policy analysis. Plaintiffs bear the initial burden to state a claim that is not barred by the DFE.

*Molchatsky* v. *United States*, 713 F.3d 159, 162 (2d Cir. 2013) (internal citations omitted).

### 2. Discussion

Plaintiff's claims against the Government are foreclosed by the DFE. Notably, Plaintiff accepts that the decision to use flash bangs was itself discretionary. (*See, e.g.*, Pl. Opp. 6-7). The Court agrees with the Government and Plaintiff: the use of flash bangs is a choice protected by the DFE. The Government notes as well that Plaintiff has not cited to any statute or regulation that determines in what instances the Government may use flash

7

bangs in executing a warrant. (Def. Reply 1). The Second Circuit, for its part, has stated that officers must look into the particular circumstances of a raid when determining whether to use flash bangs, suggesting that law enforcement officers not only do, but must, retain some discretion in determining the usage of such devices. *Cf. Terebesi* v. *Torreso*, 764 F.3d 217, 237 (2d Cir. 2014) ("The question ... is whether the use of stun grenades was reasonable under the particular circumstances alleged in this case.").

The DFE also requires an examination of whether the choice at issue implicates considerations of public policy. *See Molchatsky*, 713 F.3d at 162. The Court agrees with the Government, the Eleventh Circuit, and the Sixth Circuit that the weighing of risks and dangers from the use of different procedures and devices for arrests and warrant executions involves questions of public policy. (*See* Def. Br. 7-8). In *Williams* v. *United States*, the Eleventh Circuit determined that "the decision regarding how to best effectuate an arrest warrant is 'fundamentally rooted in policy considerations, and that judicial second-guessing of this decision thus is not appropriate.'" 314 F. App'x 253, 258 (11th Cir. 2009) (per curiam) (citing *Mesa* v. *United States*, 123 F.3d 1435, 1438 (11th Cir. 1997)). In *Milligan* v. *United States,* the Sixth Circuit similarly held that "discretionary decisions made during ... warrant execution are within the scope of conduct the discretionary function exception is intended to protect." 670 F.3d 686, 693-95 (6th Cir. 2012).

The Supreme Court has made clear that the DFE protects the Government's ability to perform the daily cost-benefit analyses it requires in

8

order to function from "judicial second-guessing." *See United States* v. *Gaubert*, 499 U.S. 315, 323 (1991). In a law-enforcement context, where such second-guessing may intrude on questions of public safety that are properly the expertise of law enforcement, the DFE is particularly appropriate.

Recognizing the strength of these arguments, Plaintiff clarifies that she does not challenge the choice to use flash bangs, but rather challenges *how* they were used. (Pl. Opp. 6 ("Plaintiff's claims under the FTCA are not concerned with the decision to use flash bombs while executing the search warrant, but are with the reckless and negligent way in which Defendants deployed the flash bombs.")). This argument runs into immediate difficulties, as the Second Circuit has stated that "where … the Government is performing a discretionary function, the fact that discretion is exercised in a negligent manner does not make the discretionary function exception inapplicable." *In re Agent Orange Prod. Liab. Litig.*, 818 F.2d at 215. The law is clear that even if, in hindsight, the Government's choice might have been excessively risky or unwise, the DFE protects it so long as it was a policy choice. Plaintiff does not address this case, but instead attempts to analogize to cases where the Government's actions were determined to be the result of negligent behavior rather than policy choices. As detailed *infra,* these cases do not involve analogous conduct, and cannot help Plaintiff's claims survive the DFE.

In arguing that the manner in which the Government deployed flash bangs creates liability under the FTCA, even if the choice to use them does not, Plaintiff relies on *Indian Towing Co.* v. *United States,* 350 U.S. 61, 69 (1955).

9

(Pl. Opp. 7). *Indian Towing* concerned a shipping accident caused by the Coast Guard's negligent operation of a lighthouse. 350 U.S. at 62. While the Government invoked the DFE in an attempt to avoid liability, the Supreme Court rejected this argument and held that the Government's decision to build a lighthouse might be protected from tort, but the manner in which it operated said lighthouse was not. *Indian Towing*, 350 U.S. at 69 ("The Coast Guard need not undertake the lighthouse service. But once it exercised its discretion to operate a light ... then the Coast Guard was further obligated to use due care ... to repair the light or give warning that it was not functioning.").

Plaintiff also points to a decision from the Ninth Circuit, *Marlys Bear Medicine* v. *U.S. ex rel. Sec'y of Interior*, 241 F.3d 1208, 1215 (9th Cir. 2001), which distinguished "the decision to take safety measures" from "the negligent implementation of those measures." (Pl. Opp. 7). In that case, the Ninth Circuit analyzed whether the Government's failure to supervise a logging operation by a private timber company allowed a claim against the Bureau of Indian Affairs ("BIA") under the FTCA. 241 F.3d at 1212. The Ninth Circuit acknowledged that granting the logging contract was a protected discretionary choice, but rejected the argument that the failure to supervise the timber operation, which the contract required, could be considered a policy choice. *Id.* at 1215 ("Even if the BIA did have discretion in its monitoring of the [logging] operation, its actions in carrying out its responsibilities were not protected policy judgments and therefore fail to satisfy the second prong of the discretionary function analysis."). In both of these cases, significant to the

courts' decisions was the fact that the Government had agreed to take on certain duties to the public and then failed to perform those duties.

The Government argues that the cases are distinguishable on this basis: Both involved the Government agreeing to take on certain actions and then creating risks by failing to do so, rather than the Government deciding to take an action that by its very nature created a potential safety risk. (Def. Reply 4-5). The Court agrees that the cases on which Plaintiff relies provide a fundamentally different situation than the one at issue here, as there is no allegation here that the Government affirmatively took on a duty and then ignored it.

As an additional distinguishing factor, *Indian Towing*, which involved a Coast Guard-operated lighthouse, and *Marlys Bear Medicine*, which involved government contracting, were situations where the Government stepped into the role of a market participant performing ordinary commercial functions. The Supreme Court in *Indian Towing* noted that the FTCA was designed to "compensate the victims of negligence in the conduct of governmental activities in circumstances like unto those in which a private person would be liable[.]" 350 U.S. at 68. This case involves the Government's unique role as the wielder of force to ensure public safety; indeed, the monopoly on the legitimate use of force is, in one conception, what makes a government. There is no "circumstance[] ... in which a private person" would be permitted to deploy flash bangs as part of a tactical raid to capture a criminal suspect in an apartment building. As noted above, "judicial second-guessing" of decisions

11

made in this context would create a greater risk to the public, and is thus more appropriately protected from tort lawsuits, than decisions made in the realm of Government contracting or building maintenance.

Plaintiff also relies heavily on a non-precedential decision that found possible FTCA liability in the context of law enforcement choices, but the underlying facts are nothing like those here. In *Andrade* v. *Chojnacki*, 65 F. Supp. 2d 431 (W.D. Tex. 1999) (*"Andrade I"*), the court examined FTCA claims against the Government in the aftermath of the raid on the Branch Davidian compound in Waco, Texas. The court dismissed most of the claims against federal law enforcement as barred by the DFE. *See Andrade*, 65 F. Supp. at 467 ("Plaintiffs' ... claims relating to the planning of the raid, stand-off, or final assault ... are ... barred by the discretionary function exception because they involve the permissible exercise of law enforcement policy judgment."). However, the court allowed to proceed the plaintiffs' allegations that law enforcement fired into the compound indiscriminately, carelessly blocked the Davidians from safely exiting the compound as it filled with tear gas, and recklessly started a fire by knocking over lanterns with its tanks. *Id.*

Those claims do not resemble the choice to use flash bangs; rather, they were particularized allegations that government agents behaved with utter disregard for the dangers of their conduct and acted outside the scope of any permissible policy choice. The surviving claims were premised on law enforcement firing indiscriminately into a building and officers blocking exits during a fire, actions that would be nearly impossible to justify under any

12

circumstances. The surviving claims were not, as the claims here are, that the Government's aggressive tactics created unnecessary risks through flawed analyses of the situation.[4]

Plaintiff provides no support for an argument that DHS acted in a manner that was *per se* inappropriate. Rather, she objects to the use of flash bangs in the specific circumstances at issue and in the specific manner of their deployment, while acknowledging that the choice to use them can be a valid one. Plaintiff's claim does not resemble the claims that were permitted to go forward in *Andrade I*. Instead, it resembles the claim against the Government for the use of tear gas, which was foreclosed. *See Andrade I*, 65 F. Supp. 2d at 266 (["T]he FBI's decision to use tear gas … [is] clearly the type [of activity] that the [DFE] was designed to protect.").

Plaintiff attempts to compensate for the inadequacies in her pleading through speculation in her opposition that the Government's use of the flash bangs was not actually a deliberate choice. (Pl. Opp. 9-10). Such speculation, however, does not provide the particularized facts necessary to meet her pleading burden. Plaintiff speculates that the flash bangs may have been used by accident or in the wrong place, because her apartment has a separate

---

[4] The distinction can be seen in a later decision in the same case, where the court determined that even a decision to use tear gas that completely ignored the risks under the circumstances would be subject to the DFE. *See Andrade* v. *United States*, 116 F. Supp. 2d 778, 788 (W.D. Tex. 2000) ("*Andrade II*") ("Plaintiffs' claim alleging that the FBI was negligent in proceeding with the tear gas operation in light of the information available regarding the condition of the building, the habits of the Davidians, and the weather is also barred by the discretionary nature of the conduct at issue. The exception covers negligence and abuse of discretion, as well as the failure to consider possible alternatives."), *aff'd sub nom. Andrade* v. *Chojnacki*, 338 F.3d 448 (5th Cir. 2003).

13

entrance from the main building. (*Id.*). As noted in *Andrade II*, even if the DHS officers ignored the conditions of the building, this would not suffice to demonstrate that the placement of the devices was not protected by the DFE. As for the speculation that the agents may have set the devices off by accident, Plaintiff provides nothing to support this allegation. For her claims to survive, Plaintiff must plead some facts suggesting that the officers did not make a policy choice, and she has not. *See Enigwe* v. *Zenk*, No. 03 Civ. 854 (CBA), 2007 WL 2713849, at *9 (E.D.N.Y. Sept. 14, 2007) (dismissing claim under FTCA as insufficiently pleaded, even as it acknowledged that the FTCA did not protect choices "borne out of laziness, hastiness, or inattentiveness").

Plaintiff's pleading acknowledges at times that she objects primarily to the Government's risk-reward calculus. (*See* Pl. Opp 8 ("Given that there is no direct access to the main building from the basement apartment, and that the steps down to the areaway could easily have been secured from the street, there was absolutely no justification for Defendants to throw flash bombs outside of the basement apartment.")). This argument as to the proper placement of the flash bangs is ultimately one that questions the choices of the Government. Plaintiff is arguing that by placing the devices where they did, the officers created risks that outweighed the benefits of use. In so doing, Plaintiff offers her own assessment of the situation in place of the officers' assessments. Plaintiff has offered alternative ways that the officers could have

conducted the raid; she has not offered a well-pleaded allegation that the agents did not make a discretionary choice.[5]

The Court finds that the choice to use flash bangs is covered by the DFE, and, thus, that the Court lacks subject matter jurisdiction over the claims against the Government.

## B. The Court Does Not Reach the Merits of Plaintiff's Claims

Because the Court lacks subject matter jurisdiction to consider Plaintiff's FTCA claims, it does not consider the merits of these claims. *Cornwell* v. *Credit Suisse Grp.*, 666 F. Supp. 2d 381, 385-86 (S.D.N.Y. 2009) ("[A]bsent authority to adjudicate, the Court lacks a legal basis to grant any relief, or even consider the action further."); *Norex Petroleum Ltd.* v. *Access Indus.*, 540 F. Supp. 2d 438, 449 (S.D.N.Y. 2007) (dismissal for lack of jurisdiction "moots, and thus terminates, all other pending motions").

## CONCLUSION

For the reasons above, the Government's motion to dismiss the FTCA claims against it is GRANTED. Plaintiff's claims against the United States are dismissed, and the Clerk of Court is directed to terminate it as a Defendant in this case. Plaintiff is ORDERED to provide a letter to the Court on or before

---

[5] Plaintiff also attempts a policy argument: She argues that finding her claims foreclosed by the DFE will "permit[] law enforcement officers to deploy such weapons in any manner they please, without reproach." (Pl. Opp. 8). This ignores the availability of remedies under *Bivens*. Indeed, the Second Circuit has already clearly brought the use of flash bangs within the scope of the Fourth Amendment's protections, and, hence, suggested that their use can create *Bivens* liability. *See Terebesi* v. *Torreso*, 764 F.3d 217, 237 (2d Cir. 2014) ("[N]o reasonable officer would think that his or her use of a stun grenade in the course of executing a search warrant was beyond the purview of the Fourth Amendment.").

15

**March 22, 2019**, stating how she intends to proceed regarding Counts One and Two of the Third Amended Complaint against the John Doe DHS Officers in their individual capacities.[6]

The Clerk of Court is directed to terminate the motion at docket entry 48.

SO ORDERED.

Dated:     March 4, 2019
             New York, New York

                                                  KATHERINE POLK FAILLA
                                                United States District Judge

---

[6] While the Complaint names the John Doe DHS officers in their official and individual capacities, the United States is the only proper defendant for officers in their official capacities. The official capacity claims against them are therefore dismissed as well. *See* 28 U.S.C. § 1346(b).