UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

MONET OLIVERAS,

                Plaintiff,

             -v.-

UNITED STATES DEPARTMENT OF HOMELAND
SECURITY INVESTIGATIONS SPECIAL
RESPONSE TEAM OFFICER ROBERT BASILE;
UNITED STATES DEPARTMENT OF HOMELAND
SECURITY SPECIAL RESPONSE TEAM OFFICER
SCOTT VOGEL; and UNITED STATES
DEPARTMENT OF HOMELAND SECURITY
INVESTIGATIONS SPECIAL RESPONSE TEAM
OFFICER JOHN DOE,

                Defendants.

16 Civ. 9619 (KPF)

**<u>OPINION AND ORDER</u>**

---

KATHERINE POLK FAILLA, District Judge:

Plaintiff Monet Oliveras brings this action against two named officers of
the United States Department of Homeland Security Investigations Special
Response Team, Robert Basile and Scott Vogel, as well as an unnamed John
Doe officer (collectively, "Defendants"). Plaintiff alleges that in the early
morning of April 27, 2016, Defendants Basile and Vogel used "flash bangs"
while executing the arrest of a resident of her apartment building. These
explosives threw Plaintiff backwards, injuring and frightening her, and
shattered two of her windows. When Plaintiff tried to leave her apartment, the
John Doe officer prevented her from doing so.

Plaintiff originally brought her claims against the United States and
unnamed DHS officers, but the Court dismissed the claims against the United
States for lack of subject matter jurisdiction. *See Oliveras* v. *United States*, 371

F. Supp. 3d 105 (S.D.N.Y. 2019). Defendants, now being sued in their individual capacities through a *Bivens* claim, bring a second motion to dismiss, this time pursuant to Federal Rule of Civil Procedure 12(b)(6). Defendants argue that: (i) Plaintiff has not brought a cognizable *Bivens* claim; (ii) they are entitled to qualified immunity; and (iii) Plaintiff has not alleged a violation of the Fourth Amendment. For the reasons set forth in the remainder of this Opinion, the Court agrees that Plaintiff has not brought a claim on which relief can be granted, and accordingly grants Defendants' motion to dismiss.

**BACKGROUND**[1]

### A.     Factual Background

Plaintiff resided at all relevant times in a basement apartment at 1649 Taylor Avenue in the Bronx. (FAC ¶ 7). Plaintiff's apartment is part of a multistory building, but her apartment has a separate entrance from the rest of the building. (*Id.* at ¶¶ 27-28). Plaintiff's apartment is accessed from a separate front door on the side of the building, which door is itself accessible by a stairway running from the street down to the door, whereas all other apartments in the building are accessed through the main front door of the apartment building. (*Id.* at ¶¶ 29-31). Plaintiff's apartment unit is the only one accessible through that side door. (*Id.* at ¶ 30).

---

[1]     The facts contained in this Opinion are drawn from Plaintiff's Fourth Amended Complaint, which is the operative pleading in this case and is referred to in this Opinion as the "FAC" (Dkt. #61). For ease of reference, the Court refers to the parties' briefing as follows: Defendants' opening brief as "Def. Br." (Dkt. #71); Plaintiff's opposition brief as "Pl. Opp." (Dkt. #73); and Defendants' reply brief as "Def. Reply" (Dkt. #74).

On April 27, 2016, Plaintiff was asleep in her apartment when she was awakened by a noise from outside at approximately 4:00 a.m.  (FAC ¶¶ 11-12). Plaintiff got out of bed to shut the window when there was a flash and explosion outside.  (*Id.* at ¶¶ 13-14).  The explosion threw Plaintiff backwards, causing her to hit her head and back against the wall, and shattered a window in her apartment.  (*Id.* at ¶¶ 15-16).  A second flash and explosion followed, shattering an additional window.  (*Id.* at ¶¶ 18-19).  The explosions emanated from flash bangs[2] that Defendants Basile and Vogel had thrown during their execution of an arrest warrant on the first floor of Plaintiff's building.  (*Id.* at ¶¶ 20, 26).  The flash bangs detonated in the areaway outside of Plaintiff's basement apartment.  (*Id.* at ¶ 33).

Plaintiff experienced numerous aftereffects from the explosions, including a ringing in her ears and dizziness from hitting her head.  (FAC ¶¶ 21-22). Plaintiff also had trouble catching her breath, and her eyes began to sting from the residual vapor and fumes from the explosions.  (*Id.* at ¶¶ 22-23).  Plaintiff went to her front door and found the John Doe DHS officer outside in full tactical gear, with his gun drawn.  (*Id.* at ¶ 24).  The unnamed officer informed Plaintiff that she could not leave her apartment.  (*Id.* at ¶ 25).  None of the Defendants provided Plaintiff with any explanation as to what was occurring, exacerbating Plaintiff's fearful state of mind.  (*Id.* at ¶¶ 34-35).

---

[2]    There is some confusion between the parties as to whether the explosive devices at issue in this action should be referred to as "flash bombs" (*see* FAC ¶¶ 20, 33), or "flash bangs" (*see* Def. Br. 1 n.1).  For the sake of consistency, the Court will refer to them as flash bangs.

Eventually, Plaintiff was permitted to leave her apartment. (FAC ¶ 36). Although Plaintiff asked Defendants for medical attention, she was ignored and instead forced to call an ambulance for herself. (*Id.* at ¶¶ 37-38). At the hospital, Plaintiff suffered from burning in her eyes, ringing in her ears, pain in her back, a migraine, and chest pains that required attention from a cardiologist. (*Id.* at ¶¶ 39-40). As a result of the damage to her home, Plaintiff had to stay with family for three weeks. (*Id.* at ¶ 41). Moreover, Plaintiff continued to suffer from irritation to her eyes, migraines, chest pains, and psychological injury as a result of her ordeal. (*Id.* at ¶¶ 42-44).

**B.    Procedural Background**

On December 13, 2016, Plaintiff filed this suit, naming as defendants New York City and unknown police officers. (Dkt. #1). On December 29, 2017, after gaining further information regarding the raid, Plaintiff filed an amended complaint against the United States, DHS, and unnamed DHS officers. (Dkt. #25). On March 6, 2017, Plaintiff filed a second amended complaint, dropping her claims against DHS. (Dkt. #36).

On April 13, 2018, Plaintiff proposed, and the Court accepted, Plaintiff's third amended complaint. (Dkt. #41-42). The third amended complaint brought claims against two unnamed DHS officers under *Bivens* v. *Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971), for false imprisonment and excessive force, and numerous Federal Tort Claims Act ("FTCA") claims against the United States. (Dkt. #41). On May 18, 2018, the Government filed a motion to dismiss the FTCA claims against it (Dkt. #48-49),

with briefing completed on June 22, 2018 (Dkt. #50-51).  On March 4, 2019, the Court issued an Opinion and Order dismissing the FTCA claims against the Government, but providing Plaintiff with the opportunity to continue with her claims against the DHS officers in their individual capacities.  (Dkt. #53).

On March 8, 2019, Plaintiff informed the Court that she wished to proceed with her claims against the DHS officers in their individual capacities and requested identification of the then-unnamed officers in order to allow for proper service and amendment of her complaint.  (Dkt. #54).  On April 25, 2019, Plaintiff filed her FAC — which is the operative complaint — bringing claims under 42 U.S.C. § 1983 and *Bivens* for (i) false imprisonment and false arrest against Defendant John Doe and (ii) excessive use of force against Defendants Basile and Vogel.  (Dkt. #61).  Defendants filed their motion to dismiss under Rule 12(b)(6), with accompanying memorandum and declaration, on September 23, 2019.  (Dkt. #70-72).  Plaintiff filed her opposing brief on October 25, 2019.  (Dkt. #73).  Defendants filed their reply brief on November 8, 2019.  (Dkt. #74).

## DISCUSSION

**A.     Plaintiff Has Failed to Raise a Cognizable *Bivens* Claim**

### 1.     Applicable Law

#### a.     Motions to Dismiss Under Rule 12(b)(6)

Defendants raise numerous arguments, but principally argue that Plaintiff has failed to allege a viable claim under *Bivens*.  (Def. Br. 1-2).[3] Rule 12(b)(6) provides a defense to parties when the plaintiff has failed "to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  When considering a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a court must "draw all reasonable inferences in Plaintiff's favor, assume all well-pleaded factual allegations to be true, and determine whether they plausibly give rise to an entitlement to relief."  *Faber* v. *Metro. Life Ins. Co.*, 648 F.3d 98, 104 (2d Cir. 2011) (internal quotation marks omitted); *see also Ashcroft* v. *Iqbal*, 556 U.S. 662, 678 (2009).  A plaintiff is entitled to relief if she alleges "enough facts to state a claim to relief that is plausible on its face."  *Bell Atl. Corp.* v. *Twombly*, 550 U.S. 544, 570 (2007); *see also In re Elevator Antitrust Litig.*, 502 F.3d 47, 50 (2d Cir. 2007) ("While *Twombly* does not require heightened fact pleading of specifics, it does require enough facts to

---

[3]     Although the FAC alleges corresponding claims under 42 U.S.C. § 1983, the Court dismisses those claims because § 1983 is not applicable against federal officials.  *See Bivens* v. *Six Unknown Named Agents of Fed. Bureau of Narcotics*, 456 F.2d 1339, 1341 (2d Cir. 1972); *see also Dotson* v. *Griesa*, 398 F.3d 156, 162 (2d Cir. 2005).

nudge plaintiff's claims across the line from conceivable to plausible." (internal

quotation marks omitted) (citing *Twombly*, 550 U.S. at 570)).

"Where a complaint pleads facts that are 'merely consistent with' a

defendant's liability, it 'stops short of the line between possibility and

plausibility of entitlement to relief.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*,

550 U.S. at 557). Moreover, "the tenet that a court must accept as true all of

the allegations contained in a complaint is inapplicable to legal conclusions.

Threadbare recitals of the elements of a cause of action, supported by mere

conclusory statements, do not suffice." *Id.*

### b. The *Bivens* Standard

Before the Court can determine whether Plaintiff has adequately alleged

a false arrest or excessive force violation, it must first determine whether

Plaintiff is able to make use of the implied remedy that is *Bivens*. Although

Congress in 1871 provided plaintiffs with a remedy for money damages if a

state official violates their constitutional rights, *see* 42 U.S.C. § 1983, Congress

has never created a similar remedy for unconstitutional acts by federal officials.

Nevertheless, in 1971 the Supreme Court created an implied damages remedy

to compensate a petitioner who suffered injury as a result of federal agents'

violation of his rights under the Fourth Amendment. *See Bivens*, 403 U.S. at

397. The Court noted that while the Fourth Amendment "does not in so many

words provide for its enforcement by an award of money damages[,] ... [t]he

present case involve[d] no special factors counseling hesitation in the absence

of affirmative action by Congress." *See id.* at 396.

Following *Bivens*, the Supreme Court recognized two other implied constitutional causes of action: in *Davis* v. *Passman*, 442 U.S. 228 (1979), and *Carlson* v. *Green*, 446 U.S. 14 (1980). *Davis* recognized a damages remedy for gender discrimination under the Fifth Amendment's Due Process Clause, *see* 442 U.S. at 248-49, while *Carlson* recognized a damages remedy for failure to provide medical treatment to an incarcerated individual under the Eighth Amendment's proscription of cruel and unusual punishment, *see* 446 U.S. at 23. Beyond these three cases, the Court has refused to recognize an implied cause of action for damages under the Constitution. *See Ziglar* v. *Abbasi*, 137 S. Ct. 1843, 1855 (2017). Indeed, since its decision in *Carlson*, the Supreme Court has expressed caution as to the prospect of expanding *Bivens* any further than the above three cases. *See id.* at 1855-56. Although the Court has acknowledged *Bivens* as "settled law," *id.* at 1857, it nevertheless has "made clear that expanding the *Bivens* remedy is now a 'disfavored' judicial activity," *id.* (quoting *Iqbal*, 556 U.S. at 675).

As other courts in the Second Circuit have noted, the Supreme Court's opinion in *Ziglar* makes "clear that the *only* recognized implied rights of action are the narrow situations presented in *Bivens*, *Davis*, and *Carlson*, and lower courts must scrutinize attempts to expand the *Bivens* remedy, even where courts had assumed the availability of such a remedy." *Gonzalez* v. *Hasty*, 269 F. Supp. 3d 45, 58 (E.D.N.Y. 2017) (emphasis in original), *aff'd*, 755 F. App'x 67 (2d Cir. 2018) (summary order); *see also Silva* v. *Canarozzi*, No. 18 Civ. 1771 (MPS), 2019 WL 1596346, at *2 (D. Conn. Apr. 15, 2019); *Rivera* v.

*Samilo*, 370 F. Supp. 3d 362, 367 (E.D.N.Y. 2019).  And although the Second Circuit has as of yet pointedly avoided answering whether *Ziglar* abrogates prior precedents from the Circuit that have extended *Bivens*, *see Gonzalez*, 755 F. App'x at 69, other Circuits have acknowledged that *Ziglar* abrogates past precedent, *see Vanderklok* v. *United States*, 868 F.3d 189, 199 (3d Cir. 2017) ("It is not enough to argue … that First Amendment retaliation claims have been permitted under *Bivens* before.  We must look at the issue anew.").  Therefore, even if the Second Circuit has previously recognized a *Bivens* remedy that goes beyond the Supreme Court's trinity, this Court cannot simply rely on that precedent.

Instead, this Court is required to follow the "rigorous two-step inquiry … to determine whether to imply a *Bivens* cause of action in a new context or against a new category of defendants."  *Rivera*, 370 F. Supp. 3d at 367.  The first step requires the court to "determine whether a plaintiff's claims arise in a new *Bivens* context."  *Id.*  "If the case is different in a meaningful way from previous *Bivens* cases decided by this Court [*i.e.*, *Bivens*, *Davis*, and *Carlson*], then the context is new."  *Ziglar*, 137 S. Ct. at 1859-60.  Moreover, the Supreme Court has cautioned that "even a modest extension is still an extension."  *Id.* at 1864.

If the context is indeed new, then the court must discern whether there are "special factors counselling hesitation in the absence of affirmative action by Congress."  *Id.* at 1857 (internal quotation marks omitted) (quoting *Carlson*, 446 U.S. at 18).  A special factor is one that "cause[s] a court to hesitate" before

answering in the affirmative "whether the Judiciary is well suited, absent congressional action or instruction, to consider and weigh the costs and benefits of allowing a damages action to proceed." *Id.* at 1858. "The threshold for concluding that a factor counsels hesitation 'is remarkably low .... Hesitation is a pause, not a full stop.'" *Ojo* v. *United States*, 364 F. Supp. 3d 163, 175 (E.D.N.Y. 2019) (quoting *Turkmen* v. *Ashcroft*, No. 02 Civ. 2307 (DLI) (SMG), 2018 WL 4026734, at *9 (E.D.N.Y. Aug. 13, 2018)).

Additionally, the court must ask "whether any alternative, existing process for protecting the injured party's interest" exists that may "amount to a convincing reason for the Judicial Branch to refrain from providing a new and freestanding remedy in damages." *Ziglar*, 137 S. Ct. at 1858. "If there is an alternative remedial structure present ..., that alone may limit the power of the Judiciary to infer a new *Bivens* cause of action." *Id.* Of potential significance to the instant motion, "[i]t matters not whether plaintiff's alternative claims w[ould] succeed." *Ojo* v. *United States*, No. 16 Civ. 4112 (MKB) (LB), 2019 WL 3852391, at *14 (E.D.N.Y. Aug. 15, 2019) (citing *Sanford* v. *Bruno*, No. 17 Civ. 5132 (BMC), 2018 WL 2198759, at *7 (E.D.N.Y. May 14, 2018) (finding the remedies that existed "to address plaintiff's situation here are thus adequate for purposes of determining whether to imply a *Bivens* remedy — even though those remedies did not work in this instance")), *report and recommendation adopted*, No. 16 Civ. 4112 (MKB) (LB), 2019 WL 4602823 (E.D.N.Y. Sept. 23, 2019). At least two courts in this Circuit have found that a plaintiff's ability to pursue her claim under the FTCA precluded the creation of a new *Bivens*

remote. *See Martinez* v. *D'Agata*, No. 16 Civ. 44 (VB), 2019 WL 6895436, at *7 (S.D.N.Y. Dec. 18, 2019); *Turkmen*, 2018 WL 4026734, at *11.

### 2. Analysis[4]

Although Defendants bring numerous arguments in support of their motion to dismiss, they primarily argue that the Court should decline to extend the *Bivens* remedy to this new context. (Def. Br. 2, 5-10). As detailed above, the Court must engage in the two-step inquiry set out by *Ziglar* in order to determine whether extension of the *Bivens* remedy is warranted in this case. For the reasons that follow, the Court finds that it would be unwise to extend *Bivens* to the facts that Plaintiff has presented.

*First*, the Court must determine whether Plaintiff's claims present a new *Bivens* context. *See Gault* v. *Agard*, No. 17 Civ. 0703 (PKC) (LB), 2019 WL 1115888, at *3 (E.D.N.Y. Mar. 11, 2019) (quoting *Sanford*, 2018 WL 2198759, at *5). The operative question is whether Plaintiff's case "is different in a meaningful way" from *Bivens*, *Davis*, and *Carlson*, the three cases in which the Supreme Court has approved of an implied damages remedy for constitutional

---

[4]    The following analysis focuses on Plaintiff's excessive force claim, as opposed to Plaintiff's false arrest claim. Neither Plaintiff nor Defendants have addressed the false arrest claim in briefing, in part because Defendants' counsel does not claim to represent the John Doe DHS officer. The Court observes, however, that Plaintiff has not served the John Doe DHS officer within the 90-day period specified by Federal Rule of Civil Procedure 4(m). *See also* Fed. R. Civ. P. 4(i)(3) ("To serve a United States officer or employee sued in an individual capacity for an act or omission occurring in connection with duties performed on the United States' behalf (whether or not the officer or employee is also sued in an official capacity), a party must serve the United States *and also serve the officer or employee under Rule 4(e), (f), or (g)*." (emphasis added)). To be clear, the Court recognizes that this failure of service is not the product of inattention on Plaintiff's part; instead, the Court understands that the Government was unable to identify the agent in question. Nonetheless, the Court must dismiss this action with respect to the John Doe DHS officer without prejudice. References to "Defendants" in the remainder of this section concern Defendants Basile and Vogel.

11

torts.  *See Ziglar*, 137 S. Ct. at 1859.  The Supreme Court has characterized

the facts of those three cases narrowly:  "[A] claim against FBI agents for

handcuffing a man in his own home without a warrant; a claim against a

Congressman for firing his female secretary; and a claim against prison officials

for failure to treat an inmate's asthma."  *Id.* at 1860.  The Court has also

explained that

> [a] case might differ in a meaningful way because of the
> rank of the officers involved; the constitutional right at
> issue; the generality or specificity of the official action;
> the extent of judicial guidance as to how an officer
> should respond to the problem or emergency to be
> confronted; the statutory or other legal mandate under
> which the officer was operating; the risk of disruptive
> intrusion by the Judiciary into the functioning of other
> branches; or the presence of potential special factors
> that previous *Bivens* cases did not consider.

*Id.*

Plaintiff argues that she has presented a "classic *Bivens*-style claim," and

therefore that the Court need not move on to the second step of the *Ziglar* test.

(Pl. Opp. 7).  However, even a cursory glance at Plaintiff's claims shows that

Plaintiff has presented qualitatively different claims from those presented in

*Bivens*.  In *Bivens*, federal agents entered the plaintiff's apartment, arrested

him in front of his family, and searched the entirety of his apartment, all

without a warrant.  *See* 403 U.S. at 389.  By contrast, Plaintiff here has alleged

that she is the unwitting victim of collateral damage stemming from

Defendants' execution of an arrest warrant.  The only similarities between

Plaintiff's claim and that presented in *Bivens* are that Defendants are federal

agents and that Plaintiff alleges a violation of the Fourth Amendment.  Beyond

that lay numerous differences, all of which, whether considered separately or in the aggregate, amount to a "meaningful difference." *See Martinez*, 2019 WL 6895436, at *7 (finding new context where arrest was made pursuant to a warrant outside the plaintiff's home; the officers were members of a federal task force, as opposed to DEA agents; the right at issue was the right to be free from excessive force, as opposed to a right to privacy; and the theory of liability was different).

In finding that Plaintiff's claims arise in a new context, the Court takes seriously the Supreme Court's admonition that "even a modest extension is still an extension." *Ziglar*, 137 S. Ct. at 1864.  Indeed, even if Plaintiff's claims were factually similar to those presented in *Bivens* — and they are not — the Court would still find that this case arises in a new context because of the lack of judicial guidance on the subject.  In *Ziglar*, the Court held that the respondents' claim, although exhibiting "significant parallels" to *Carlson*, nevertheless presented a new context because "the judicial guidance available to [the] warden … was less developed." *See id.*  Similarly here, it is unclear that judicial precedents exist that provide a meaningful guide for official conduct under the facts alleged.

The most on-point precedent Plaintiff can point to is *Terebesi* v. *Torreso*, a Second Circuit case involving an incident in which the police engaged in a SWAT-style raid and threw three flash bangs into the plaintiff's home in the course of executing a search warrant of that home.  *See* 764 F.3d 217, 221-22,

(2d Cir. 2014).[5] The Second Circuit affirmed the district court's denial of qualified immunity to the officers who used the flash bangs, finding that "no reasonable officer would think that his or her use of a stun grenade in the course of executing a search warrant was beyond the purview of the Fourth Amendment," and that there were material questions, given the lack of any real evidence that the plaintiff posed a threat, as to whether the defendants' conduct was objectively reasonable under the circumstances. *See id.* at 237, 239. Although *Terebesi* provides judicial guidance to law enforcement personnel considering lobbing flash bangs into the home of a non-violent target of a search warrant, it unclear that *Terebesi* has much to say about whether the Fourth Amendment has been transgressed when flash bangs are deployed in an outdoor area, in the course of executing an arrest warrant, and inadvertently injure a non-target of that warrant. Along with the factual differences already highlighted, the lack of judicial clarity on the claims presented in this action point to Plaintiff's claims arising in a new context.

Having found that Plaintiff's claims arise in a new context, the Court must next determine whether "the plaintiff has at h[er] disposal 'an alternative remedial structure' that would provide the same or similar relief in the absence of an implied remedy." *Ojo*, 364 F. Supp. 3d at 171 (quoting *Ziglar*, 137 S. Ct. at 1858). Defendants argue that the FTCA exists as the alternative remedial

---

[5]     Specifically, the officers in *Terebesi* "planned to smash Terebesi's windows, detonate at least three stun grenades … inside the home, break down the front door with a battering ram, and storm the house with weapons drawn," all in order to search the home "for a small amount of crack cocaine and drug paraphernalia." *Terebesi* v. *Torreso*, 764 F.3d 217, 221-22 (2d Cir. 2014).

structure, and in light of that statute's existence, Plaintiff is precluded from bringing a *Bivens* claim. (Def. Br. 8-9). Plaintiff, for her part, notes both that this Court has already found that she cannot bring a successful claim under the FTCA, *see Oliveras*, 371 F. Supp. 3d at 110, and that the FTCA expressly does not preclude claims "brought for a violation of the Constitution," *see* 28 U.S.C. § 2679(b)(2)(A). (Pl. Opp. 9-10).

Although the Supreme Court in *Carlson* found that the existence of the FTCA did not preclude plaintiffs from bringing *Bivens* claims, *see* 446 U.S. at 23, courts in this Circuit have noted that *Carlson*'s analysis of that issue may not have survived *Ziglar*, *see, e.g.*, *Ojo*, 364 F. Supp. 3d at 174-75; *Turkmen*, 2018 WL 4026734, at *10. Moreover, several sister courts have found that the existence of the FTCA as an alternative remedy was enough to preclude the extension of *Bivens*. *See Martinez*, 2019 WL 6895435, at *7; *Rivera*, 370 F. Supp. 3d at 370-71; *Abdoulaye* v. *Cimaglia*, No. 15 Civ. 4921 (PKC), 2018 WL 1890488, at *7 (S.D.N.Y. Mar. 30, 2018); *Morgan* v. *Shivers*, No. 14 Civ. 7921 (GHW), 2018 WL 618451, at *6 (S.D.N.Y. Jan. 29, 2018).

The Court acknowledges that it is a close question as to whether *Carlson*'s analysis of the interrelationship between the FTCA and *Bivens* is still valid. Nevertheless, the Court finds that the existence of the FTCA as an alternative remedy qualifies as a special factor that counsels hesitation in extending *Bivens* to cover Plaintiff's claims. The Court comes to this conclusion for several reasons. *First*, the Court is strongly guided by the contrasts between the Supreme Court's language in *Carlson* and its more

recent language in *Ziglar*. In the former case, the Court explained that a *Bivens* action may be precluded "when defendants show that Congress has provided an alternative remedy which it *explicitly* declared to be a *substitute* for recovery directly under the Constitution and viewed as equally effective." *Carlson*, 446 U.S. at 18-19 (first emphasis added, second in original). By contrast, the Court in *Ziglar* set a far broader standard, requiring only Congress's creation of "any alternative, existing process for protecting the injured party's interest." *See* 137 S. Ct. at 1858 (internal brackets omitted). This broader language fatally undermines *Carlson*'s finding that the FTCA is not an adequate alternative remedy, because the *Ziglar* court has made clear that the law no longer requires an "explicit congressional declaration that persons injured ... may not recover money damages from agents but must be remitted to another remedy, equally effective in the view of Congress." *See Carlson*, 446 U.S. at 19; *see also Turkmen*, 2018 WL 4026734, at *10. All that is required now is the existence of an alternative remedial structure that could encompass the plaintiff's claim. The *Ziglar* court recognized the possibility of this analytical change in declaring that "it is possible that the analysis in the Court's three *Bivens* cases might have been different if they were decided today." 137 S. Ct. at 1856.

*Second*, the Court believes that its conclusion better reflects Congress's intent. Plaintiff's only argument that the FTCA does not preclude her *Bivens* claim relies on 28 U.S.C. § 2679(b)(2)(A) (Pl. Opp. 10-11), which provides that § 2679(b)(1)'s designation of the FTCA as the exclusive remedy for tort actions

16

against the Government does not preclude actions brought against individual employees "for a violation of the Constitution of the United States."  But as Defendants point out (Def. Reply 6), the mere fact that the FTCA does not by its terms bar constitutional claims against employees cannot mean that a *Bivens* remedy must be available, because then a *Bivens* remedy would need to be available for all constitutional torts.  *Ziglar*, as noted above, is crystal clear that this is simply not the case.  A reading of § 2679(b)(2)(A) and Supreme Court precedent leads to the more logical conclusion that Congress wished to preserve the *Bivens* remedy in the specific contexts where it has been found available — not expand the remedy in a roundabout fashion.  Therefore, understanding that it is properly Congress's (and not the Court's) role to determine whether a plaintiff may seek damages in the absence of any statutory authorization, *see Ziglar*, 137 S. Ct. at 1857, the Court finds that Congress did not intend for individuals with Plaintiff's claims to be able to bring an action for damages under *Bivens*.

*Third* and finally, the Court's understanding of Congress's intent is also in accordance with precedent.  The Court acknowledges that, having already found that Plaintiff's claims against the Government were barred by the FTCA's discretionary function exception, *see Oliveras*, 371 F. Supp. 3d at 110, the Court's present decision will leave Plaintiff entirely without a remedy.  However, as other courts in this Circuit have noted, "just because Congress has not enacted a remedial scheme that would satisfy plaintiff on the facts of his particular case does not mean that the alternative remedial scheme that it did

17

pass is inadequate under *Ziglar*." *Sanford*, 2018 WL 2198759, at \*6. Indeed, the Second Circuit itself has noted that "it is the overall comprehensiveness of the statutory scheme at issue, not the adequacy of the particular remedies afforded, that counsels judicial caution in implying *Bivens* actions." *Dotson* v. *Griesa*, 398 F.3d 156, 167 (2d Cir. 2005) (citing to *Schweiker* v. *Chilicky*, 487 U.S. 412, 421-22 (1988)). Here, Congress not only enacted a comprehensive statute providing for remedies against tortious conduct by Government employees, but even more relevantly, explicitly exempted from liability the kind of conduct at issue here through the discretionary function exception. *See Oliveras*, 371 F. Supp. 3d at 110; *see also* 28 U.S.C. § 2680(a).

"Congressional inaction or limited action may be as indicative of its intent as the creation of a remedy that would satisfy a particular plaintiff." *Sanford*, 2018 WL 2198759, at \*6. Given Congress's decisions to provide an exemption to Governmental liability in this action and to not provide any express remedy against the individual Defendants, the Court finds that both *Ziglar* and *Dotson* require the Court to defer to Congress's (in)action. *See Ziglar*, 137 S. Ct. at 1857 ("[T]he Legislature is in the better position to consider if the public interest would be served by imposing a new substantive legal liability." (internal quotation marks omitted)); *Dotson*, 398 F.3d at 167 ("[T]he concept of special factors counseling hesitation in the absence of affirmative action by Congress has proved to include an appropriate judicial deference to indications that congressional inaction … has not been inadvertent." (internal quotation marks omitted) (quoting *Schweiker*, 487 U.S. at 423)).

Moreover, even if the existence of the FTCA as an alternative remedy were not sufficient to counsel hesitation, the Court would nevertheless have ample reason to hesitate. As Defendants have noted (Def. Br. 10-12), it is unlikely that Plaintiff has actually alleged a violation of the Fourth Amendment. "Violation of the Fourth Amendment requires an *intentional* acquisition of physical control. ... [T]he detention or taking itself must be willful." *Brower* v. *Cty. of Inyo*, 489 U.S. 593, 596 (1989) (internal citations omitted) (emphasis added). Clarifying the concept of intent, the Second Circuit has held that for there to be a seizure under the Fourth Amendment, the victim must have been the intended target of the governmental action, even if law enforcement were "mistaken as to the victim's identity." *See Medeiros* v. *O'Connell*, 150 F.3d 164, 168-69 (2d Cir. 1998). Under the facts alleged, it is clear that Defendants' flash bangs were directed not at Plaintiff, but at the subject of the arrest warrant. Given that Plaintiff's injuries to person and property — while regrettable — were no more than the "unintended consequence of government action," *id.* at 169 (internal brackets omitted), it is unclear that Plaintiff has even alleged a valid constitutional claim. In other words, while sympathetic to the substance of Plaintiff's claims, the Court is appropriately hesitant to recognize a judicially created remedy for a claim that rests on such a shaky legal foundation.

Having found that Plaintiff's claims arise in a new context and that numerous special factors counsel hesitation in recognizing the extension of the *Bivens* remedy to such a context, the Court finds that Plaintiff has no

19

cognizable claims on which relief may be granted.  Accordingly, Plaintiff's

claims are dismissed.[6]

### CONCLUSION

For the reasons set forth in this Opinion, Defendants' motion to dismiss

is GRANTED and Plaintiff's claims are DISMISSED.  Specifically, Plaintiff's

claims against Defendants Basile and Vogel are dismissed with prejudice, and

her claims against the John Doe Defendant are dismissed without prejudice.

---

[6]     Even if Plaintiff did have a cognizable *Bivens* claim, Defendants would still be entitled to qualified immunity.  On a motion to dismiss, the court must, while affording the plaintiff to all reasonable inferences in her favor, "ask whether the plaintiff has pled facts showing [i] that the official violated a statutory or constitutional right[;] and [ii] that the right was 'clearly established' at the time of the challenged conduct."  *Neary* v. *Wu*, 753 F. App'x 82, 84 (2d Cir. 2019) (summary order) (internal quotation marks omitted) (quoting *Ganek* v. *Leibowitz*, 874 F.3d 73, 80 (2d Cir. 2017)).  "Official conduct violates clearly established law 'when, at the time of the challenged conduct, the contours of a right are sufficiently clear that every reasonable officer would have understood that what he is doing violates that right.'"  *Terebesi*, 764 F.3d at 230 (internal quotation marks omitted) (quoting *Ashcroft* v. *al-Kidd*, 563 U.S. 731, 741 (2011)).  In determining whether the relevant law was clearly established, courts consider "the specificity with which a right is defined, the existence of Supreme Court or Court of Appeals case law on the subject, and the understanding of a reasonable officer in light of preexisting law."  *Id.* at 231 (citing *Scott* v. *Fischer*, 616 F.3d 100, 105 (2d Cir. 2010)).  In this case, only Supreme Court and Second Circuit precedent are relevant to the inquiry.  *See Sanchez* v. *Bonacchi*, 791 F. App'x 218, 220 (2d Cir. 2019) (summary order).  Moreover, "existing precedent must have placed ... the constitutional question beyond debate."  *Id.* at 221 (quoting *al-Kidd*, 536 U.S. at 741).  In the end, the Supreme Court "has held that qualified immunity protects 'all but the plainly incompetent or those who knowingly violate the law.'"  *Ziglar* v. *Abbasi*, 137 S. Ct. 1843, 1867 (2017) (quoting *Malley* v. *Briggs*, 475 U.S. 335, 341 (1986)).

As already discussed in the Court's *Bivens* analysis, the most relevant precedent to this action is *Terebesi*.  However, *Terebesi* has three notable distinctions from the instant action: (i) the flash bangs were thrown directly into the plaintiff's home, instead of thrown outside the home; (ii) the flash bangs were thrown in the course of executing a search warrant, as opposed to an arrest warrant; and (iii) the flash bangs were thrown at, and injured, the officers' intended target, as opposed to inadvertently injuring a bystander.  Given that "clearly established law should not be defined at a high level of generality," *Sanchez*, 791 F. App'x at 221 (quoting *White* v. *Pauly*, 137 S. Ct. 548, 552 (2017)), and that the relevant precedent must have placed the question of whether Defendants' conduct violated the Fourth Amendment "beyond debate," *id.*, the Court concludes that the right at issue here — the right to not be inadvertently injured by flash bangs — was not clearly established.  *Cf. id.* at 221-22 (finding law was not clearly established as to body cavity searches for felony drug arrests because relevant precedent was only clear as to people arrested for misdemeanors).

The Clerk of Court is directed to terminate all pending motions, adjourn all remaining dates, and close this case.

SO ORDERED.

Dated: February 25, 2020
New York, New York

_____
KATHERINE POLK FAILLA
United States District Judge